UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA                                                    Plaintiff

v.                                                       Criminal Action No. 3:25-cr-122-RGJ

DALE TODD                                                                    Defendant

* * * * *

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Dale Todd's ("Todd") Motion to Suppress

Evidence. [DE 19]. The Court held an evidentiary hearing on February 3, 2026, [DE 21], and the

parties filed post-hearing briefs [DE 25; DE 26]. The matter is ripe. For the reasons below, Todd's

motion to suppress [DE 19] is **DENIED**.

### I.    BACKGROUND

At the February 3 suppression hearing, the Court heard testimony from Sergeant Jeremy

Boehnlein ("Boehnlein"), a thirteen-year LMPD employee, and Detective Woodrow Murphy

("Murphy"), a seven-year LMPD employee. [DE 22, Hr'g Tr. at 56, 68]. Boehnlein testified that,

on December 6, 2024, he was contacted by Special Agent Drew Bledsoe ("Bledsoe") with the

Bureau of Alcohol, Tobacco, and Firearms ("ATF"). [*Id.* at 57]. Bledsoe informed Boehnlein that

a vehicle associated with Todd had just dropped off another individual at the federal courthouse in

Louisville and was now parked was on 6th Street outside the courthouse. [*Id.*]. Bledsoe and

Boehnlein "had a discussion together about whether [they] wanted to conduct a follow on the

vehicle or just conduct a stop on it," with Boehnlein ultimately deciding that "it would be easier

to just go ahead and conduct a stop." [*Id.* at 65]. Boehnlein then contacted others in his unit, set up

a loose perimeter around the vehicle, and drove by the vehicle to see if he observed any parking

1

or moving violations. [*Id.* at 57]. Boehnlein observed what he believed to be excessive tint and "a tinted cover over the top of the registration plate that obscured [his] vision of being able to see the actual letters and numbers on the registration plate." [*Id.* at 58]. Upon observing these violations, Boehnlein spoke with Bledsoe and they "decided to conduct an occupied vehicle stop." [*Id.*].

Boehnlein testified that the vehicle was running at the time of the stop. [*Id.*]. He approached the vehicle and opened the door to the backseat, where Todd was sitting, upon which he smelled the odor of marijuana. [*Id.* at 60]. Boehnlein explained to Todd that they stopped him because "the window tint appeared illegal, appeared too dark, and there was also a tinted cover over the registration plate which [Todd] can't have because it obscures [the officers'] ability to read the plate." [*Id.*]. Murphy, also present during the stop, likewise testified that they initially stopped the vehicle due to "excessive window tint" and a "tinted cover" over the license plate. [*Id.* at 69]. As he approached the vehicle, Murphy gave commands to roll down the windows because "the windows were so dark, [and he] couldn't see in the vehicle for officer safety." [*Id.* at 70]. Once the windows were rolled down, Murphy smelled the odor of marijuana and observed an extended magazine in the backseat of the vehicle. [*Id.*]. He then observed a handgun on floor of vehicle. [*Id.* at 71].

Ultimately, Todd was arrested and charged with one count of possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(8). [*Id.* at 63; DE 1]. He was also given a citation—written by Murphy—which stated that the vehicle had been stopped "for improper parking and other vehicle equipment violations." [Government Ex. 2, Todd Citation]. Thomas Perkins ("Perkins"), the driver of the vehicle, was likewise arrested and was given a citation—written by Detective Robert Doolin ("Doolin")—that charged him with improper

parking violations and improper display of registration plates.[1] [*Id.*, Perkins Citation; DE 22 at 72]. Neither of the citations charged Todd or Perkins with window tinting, and Boehnlein explained that this is because the detectives did not have a window tint measuring tool, so they could not "100 percent say the tint was illegal." [DE 22 at 62]. Still, both Boehnlein and Murphy testified that they believed the tint to be in excess of what is permitted under the law. [*Id.* at 62, 73]. Body camera footage played at the hearing also showed that the vehicle had tinted windows and a tinted license plate cover. [*See* Government Ex. 1, Boehnlein Body Camera, at 11:54:10–11:54:15; Government Ex. 3, Murphy Body Camera, at 11:53:40–11:53:46].

## II.    DISCUSSION

Todd argues that officers lacked probable cause to believe that a traffic violation occurred, and therefore the initial stop of the vehicle violated the Fourth Amendment. [DE 19 at 47; DE 25 at 86]. As a result, he maintains that everything following the purportedly illegal stop—including "the subsequent seizure of the occupants; their removal from the vehicle[;] their detention; their arrest; and the search of the vehicle"—was unconstitutional. [DE 25 at 86]. He requests suppression of all evidence obtained as a result of the stop, including: (1) the Glock, Model 21, .45 caliber pistol and ammunition, (2) any statements made by defendant during or after said illegal stop, detention, search, and arrest, and (3) any DNA or other scientific tests conducted on said firearm and ammunition. [DE 19 at 44; DE 25 at 97]. The United States argues that officers had probable cause to stop the vehicle because, prior to initiating the stop, they observed excessive tint

---

[1] Todd's original motion to suppress challenged that the stop could be premised on the purported parking violation in the citations, which Todd asserted was directly contrary to the body camera footage received in discovery. [DE 19]. It is clear from body camera footage shown at the hearing that the car was parked legally, and Boehnlein's testimony also confirmed that "it was not illegally parked." [*Id.* at 66]. Consequently, the Court agrees that the alleged parking violation in the citations could not serve as a lawful basis for the stop. At the hearing, however, officers testified that the vehicle was stopped due to tinted windows and an obstructed registration plate. [DE 22 at 61, 73].

on the vehicle's windows and the improper display of registration plates, both of which constitute traffic violations under Kentucky law. [DE 26 at 110]. Because Todd challenges only the constitutionality of the initial stop of the vehicle, the Court limits its analysis to this issue.

The temporary stop and detention of a vehicle and its passengers, even for a brief period of time, can constitute an unlawful "seizure" under the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Because an ordinary traffic stop constitutes a "seizure" within the meaning of the Fourth Amendment, "any evidence seized during an illegal traffic stop must be suppressed as fruits of the poisonous tree." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008). "[A] police officer lawfully may stop a car when he has probable cause to believe that a civil traffic violation has occurred, or reasonable suspicion of an ongoing crime." *United States v. Jackson*, 682 F.3d 448, 453 (6th Cir. 2012) (citing *Blair*, 524 F.3d at 748). When an officer has probable cause to believe a traffic violation has occurred, he may lawfully stop the vehicle regardless of whether he is using the traffic violation as a pretext to initiate a stop of an otherwise suspicious vehicle. *United States v. Miller*, 413 F. App'x 841, 843 (6th Cir. 2011) ("[E]ven if [the officer] used the failure to signal as a pretext to initiate a traffic stop of an otherwise-suspicious vehicle, this fact does not undermine the probable cause that existed to make the stop if [the defendant] failed to signal his turn."). In other words, "the legality of a traffic stop does not hinge on an officer's internal motivation." *Id.* (citing *Whren v. United States*, 517 U.S. 806, 812–13 (1996)). "[I]n the context of 'ongoing' traffic violations—like a blocked license plate or . . .an overly tinted window . . . the less demanding 'reasonable suspicion' standard applies." *United States v. Shelton*, 817 F. App'x 217, 219 (6th Cir. 2020); *see also United States v. Simpson*, 520 F.3d 531, 541 (6th Cir. 2008) (holding that a stop based on reasonable suspicion that defendant failed to keep a license plate clearly legible did not violate the Fourth Amendment).

As a preliminary matter, the Court notes that the less-demanding reasonable suspicion standard may be appropriate here, given that the violations officers observed—tinted windows and an obscured license plate—are both typically considered ongoing violations under Sixth Circuit precedent. However, out of an abundance of caution, the Court will apply the more rigorous probable cause standard. The Sixth Circuit has held that obscured license plates and overly tinted windows are "ongoing" violations because they do not cease when the driver is pulled over, and ongoing violations require only reasonable suspicion. *United States v. Jeffries*, 457 Fed. App'x 471, 477 (6th Cir. 2012). Todd argues, however, that the Kentucky window tinting statute creates a violation only for moving vehicles, therefore suggesting that the violation would be *completed* once the vehicle is stopped, requiring probable cause. *See id.* ("Out of an abundance of caution, we assume that [defendant's] driving too closely was a completed traffic violation—insofar as the violation was completed by the time she was pulled over—and that therefore the probable cause standard applies."). As explained below, the Court disagrees with Todd's argument, but it nonetheless applies the probable cause standard for completed traffic violations out of an abundance of caution.

Here, both Boehnlein and Murphy testified that they observed the vehicle's tinted windows and tinted license plate cover. Though Todd challenges the credibility of that testimony, [DE 25 at 96], the tinted windows and obscured license plate can be seen in body camera footage, thus corroborating the officers' testimony. [Government Ex. 1, Boehnlein Body Camera, at 11:54:10–11:54:15; Government Ex. 3, Murphy Body Camera, at 11:53:40–11:53:46]. Kentucky's windshield tint law, KRS 189.110, provides that vehicles may only be tinted on the upper portion of the windshield, or above the AS/1 line. K.R.S. 189.110(2)(b). The statute also sets forth tinting limits for the front and rear side windows. K.R.S. 189.110(3). Violating either provision is a Class

5

B misdemeanor under Kentucky law. K.R.S. 189.110(9). Kentucky law also requires that "[registration] plates . . . be kept legible at all times" and prohibits any "rim, frame, or other covering around the plate [that] obscure[s] or cover[s] any lettering or decal on the plate[.]" KRS 186.170(1). Accordingly, the officers' observation of the vehicle's tinted windows and tinted license plate cover gave them probable cause to believe that the vehicle had violated KRS 186.170 and KRS 189.110. Because officers had probable cause to believe a traffic violation had occurred, the initial stop of the vehicle was not unreasonable.

With respect to the vehicle's purported violation of the Kentucky window-tint law, Todd argues that (1) there is no evidence that the statute was being violated, and (2) the statute does not apply to parked cars. [DE 25 at 95]. First, he claims that the "standard of whether the statute is being violated is not a subjective one," but depends on "precise technical measurements," none of which were made during the stop. [*Id.* at 96]. Without this measurement, Todd argues, officers could not have had probable cause to believe a violation had occurred. However, for purposes determining whether the initial stop was justified, it is irrelevant whether the vehicle *in fact* was in violation of the window tinting and registration plate statutes.

> In assessing the lawfulness of a stop, courts must focus
>
> not on whether a reasonable officer "would" have stopped the suspect . . . or whether any officer "could" have stopped the suspect (because a traffic violation had in fact occurred), but on whether this particular officer in fact had probable cause to believe that a traffic offense had occurred, regardless of whether this was the only basis or merely one basis for the stop.

*United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993). In other words, a stop is reasonable if "the facts known to the officer *at the time of the stop* were sufficient to constitute probable cause[.]" *Id.* (emphasis added). The Sixth Circuit has held "that an officer reasonably suspects a window-tint violation if the officer is 'familiar[ ]' with their state's tint law and 'estimate[s] that [a] vehicle

6

[is] tinted substantially darker than' that law permits." *Shelton*, 817 F. App'x at 219 (citing *United States v. Shank*, 543 F.3d 309, 313 (6th Cir. 2008) (affirming denial of motion to suppress)). Here, both officers testified that the window tint appeared illegal based on their training and experience. [DE 22 at 62, 73]. Based on the Court's review of the body camera footage and observation of the officers at the evidentiary hearing, the Court is satisfied as to the officer's experience with window tint given their years of service, the credibility of their testimony, and the reasonableness of the foundation for the stop. *See Shelton*, 817 F. App'x at 219 (6th Cir. 2020) ("Detective Tate testified, credibly, in the magistrate judge's view, that he has a decade's worth of experience enforcing Tennessee's window-tint law, and that, based on that experience, he believed the car Shelton was riding in had windows tinted substantially below Tennessee standards.").

The officers' failure to confirm the illegality of the tint or charge the driver for the window tint does not affect the lawfulness of their initial stop of the vehicle. *See United States v. Hughes*, 606 F.3d 311, 320 (6th Cir. 2010) ("Having probable cause is not the same thing as being absolutely certain; it is possible . . . for an officer to have probable cause for a stop even where the individual being stopped has not actually violated any law."); *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001) ("Probable cause is assessed 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" (quoting *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001))). In *United States v. Flores*, the defendant similarly argued that a vehicle stop for excessive window tint was unlawful because the officer never performed a window tint test to confirm his suspicions. 30 F. Supp. 3d 599, 603 (E.D. Ky. 2014). The court rejected this argument, noting that "[w]hether [the defendant] actually violated the law is immaterial." *Id.* Rather, the critical question was whether the officer had probable cause "to believe the window tinting was unlawful at the time of the stop." *Id.*; *see also United States v. Brewer*, No. 3:17-CR-

37-DJH, 2018 WL 616145, at *3 n.2 (W.D. Ky. Jan. 29, 2018) (rejecting defendant's argument that officers' failure to measure the window tint affected the lawfulness of the stop because "a 'tint meter' is used to confirm a violation after a vehicle is stopped, not to establish reasonable suspicion for a stop"). The same is true here.

Second, Todd argues that because the statute specifies that "a person shall not *operate* a motor vehicle" that has excessive window tint, it only applies to vehicles being "operated" at the time of observation. [DE 25 at 95–96 (emphasis added)]. However, the statute also states that "[a] person who applies sunscreening materials in violation of this section shall be guilty upon conviction of a Class B misdemeanor." KRS 189.110(9). It defines the actual violation as the *application* of the tint, making a violation of this subsection of the statute an equipment violation as opposed to a moving violation. In other words, the statute is violated if a vehicle is equipped with noncompliant tinting materials, so a parked vehicle can be in violation of the statute simply through improperly tinted windows. Moreover, officers may lawfully stop a vehicle for a completed misdemeanor traffic violation as long as they have probable cause to believe the violation already occurred. *Simpson*, 520 F.3d at 541. In the context of *ongoing* misdemeanor traffic violations, the Sixth Circuit applies the less-demanding reasonable suspicion standard. *Id.* Here, Boehnlein could see that the car was running, and he had been informed by another officer that the car had just dropped someone off at the courthouse—meaning the vehicle was being operated. [DE 22 at 57–58]. Thus, even if the statute was only violated while the vehicle was in motion, the officers had probable cause to believe the violation had already occurred, which justified the stop.

Ultimately, even if officers lacked probable cause to believe that the parked car had violated KRS 189.110, this point is immaterial given that they surely had probable cause to believe

8

the car was in violation of KRS 186.170. Todd's only argument with respect to the officers' belief that the car's license plate cover was illegal is that body camera footage shows a clearly legible license plate. [DE 25 at 89, 96–97]. However, Todd points to a portion of the body camera footage that was taken after the stop had already occurred, when the officers were standing directly behind the vehicle. [*Id.* at 90; Government Ex. 1, Boehnlein Body Camera, at 11:54:57]. When officers were further away from the vehicle, however, the tinted cover obscured the view of the license plate. [Government Ex. 1, Boehnlein Body Camera, at 11:54:10–11:54:15].

Finally, Todd argues that officers had already decided to stop the vehicle before observing any traffic violations and simply "conjur[ed] up" probable cause to justify the stop. [DE 25 at 94]. Yet, the officers' subjective motivations for conducting the stop are irrelevant—"[t]he stop is reasonable if there was probable cause, and it is irrelevant what else the officer knew or suspected about the traffic violator at the time of the stop." *Ferguson*, 8 F.3d at 391. Pretextual stops are constitutional, so the fact that the officers may have suspected Todd of another crime does not eradicate the probable cause that was created upon witnessing the tinted windows and plates. *See Whren*, 517 U.S. at 813. The officers credibly testified that they observed the violations before initiating the stop, so any other subjective motivations they possessed are immaterial. *See Ferguson*, 8 F.3d at 391 ("[I]f the facts known to the officer at the time of the stop were sufficient to constitute probable cause to believe that a traffic violation had occurred, a reviewing court may not look at the officer's ordinary routine, or his conduct or conversations that occurred before or after the stop to invalidate the stop as pretextual.").

### III.     CONCLUSION

For all these reasons, the Court **DENIES** Todd's motion to suppress. [DE 19].

Rebecca Grady Jennings, District Judge
United States District Court

March 31, 2026

10